UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

DR. GREGORY A. HAMON

    Petitioner,

    v.

FRANCIS J. HARVEY, Secretary of the United States Army, et al.,

    Respondents.
_____/

No. C 06-3566 PJH

**ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION AND DISMISSING PETITION FOR WRIT OF HABEAS CORPUS AND WRIT OF MANDAMUS**

Petitioner's motion for preliminary injunction came on for hearing before this court on July 26, 2006. Petitioner, Dr. Gregory A. Hamon ("petitioner"), appeared through his counsel, Stephen L. Collier. Respondents, various officials serving in the U.S. Army and U.S. Army Reserve ("respondents"), appeared through their counsel, Steven J. Saltiel. Having read the parties' papers and carefully considered their arguments and the relevant legal authority, and good cause appearing, the court hereby DENIES petitioner's motion, and further DISMISSES petitioner's underlying petition for writ of habeas corpus and writ of mandamus, for the reasons stated at the hearing, and as follows.

**BACKGROUND**

This instant action stems from an order of deployment issued by the U.S. Army Reserves. Petitioner is a Lieutenant Colonel in the U.S. Army Reserves, and serves as a reserve medical doctor under the command of the U.S. Army Reserve Medical Command. Petitioner is contesting an order of deployment that was issued to him by respondents on May 28, 2006.

    A.    Background Facts

Petitioner was previously deployed, on February 8, 2003. On that occasion,

petitioner served in Iraq as General Surgeon for a Forward Surgical Team, and his tour lasted from February 10, 2003 through June 10, 2003.

As a result of this 2003 mobilization, petitioner alleges that he suffered severe hardship.  First, he asserts that he was forced to close his medical practice.  Although he had a business partner at the time, petitioner claims that his deployment ruined that relationship, because petitioner was forced to pack up his half of the practice.  He was also required to pay his share of the lease and other expenses, even though he could not run the practice, resulting in financial hardship.  Petitioner further alleges that the Army failed to pay him the medical specialty pay to which he was entitled until his third month of deployment, further contributing to his financial hardship.

In addition, petitioner claims that his 2003 deployment negatively affected his family life.  Petitioner's wife, Maria Hamon, was forced to become the primary breadwinner for the family while simultaneously trying to care for the family's three children, and her income as a nurse case manager proved to be insufficient to cover the family's expenses and petitioner's business debts.  As a result, the family began defaulting on home loans and other debts, and petitioner's wife, who suffers from depression, began to suffer depressive symptoms.  The family's adolescent daughter also began to exhibit serious behavioral problems.  Petitioner asserts that these personal problems were exacerbated by the fact that petitioner was unable to have any contact with his family due to the nature of his mission in Iraq.

When petitioner finally returned from his 2003 deployment, he was forced to restart his medical practice from scratch.  He also underwent thirteen months of therapy with his wife in order to, in his words, "put their [lives] back together."

In December 2005, petitioner was notified that he would again be deployed on March 5, 2006, which date was subsequently postponed until June 19, 2006.  On January 1, 2006, petitioner submitted a formal letter of resignation from the Army Reserves, on the basis of hardship, pursuant to Army Regulation ("AR") 135-137 §§ 6-10.  On February 16,

2006, petitioner followed up his letter of resignation with a formal application for discharge on the basis of hardship. In May 2006, petitioner learned that the staff judge advocate's office with the AMEDD Physician Management Command was recommending that petitioner's request be approved.

The Army, however, failed to take immediate action on petitioner's resignation request. Instead, on May 28, 2006, the Army Reserve Medical Command issued orders commanding petitioner to report to El Paso, Texas, on June 7, 2006, for deployment. This June 7, 2006 date advanced petitioner's deployment by 12 days and gave petitioner one week in which to shut down his practice. The order of deployment mobilizes petitioner for 365 days in Iraq.

B.   Procedural History

On June 5, 2006, petitioner filed a Petition for Writ of Habeas Corpus and for a Writ of Mandamus, challenging military custody on grounds that his resignation request had not been acted upon, and seeking an order requiring petitioner's resignation and honorable discharge from the Army. Petitioner simultaneously requested a Temporary Restraining Order preventing the Army from enforcing petitioner's June 7, 2006 order of deployment.

On June 6, 2006, the court held a telephonic conference with counsel for petitioner, counsel for respondents, and an Army representative. During that conference, the Army agreed to stay petitioner's deployment for 60 days to allow for briefing of the issues raised by petitioner. Accordingly, the court denied petitioner's TRO request as moot, and set a briefing schedule regarding the claims raised in petitioner's habeas petition, ordering petitioner to address all claims by way of a motion for preliminary injunction.

Petitioner then filed the instant motion for preliminary injunction, wherein petitioner made 3 claims for relief: (1) for an injunction prohibiting respondents from deploying petitioner pending respondents' determination of his resignation request or, if that request is denied, pending the instant action; (2) for an order granting petitioner's writ of habeas corpus in the event respondents deny his resignation request, ordering petitioner's release

3

from the Army with an honorable discharge; and (3) for an order granting petitioner's writ of mandamus in the event respondents deny his resignation request, and ordering petitioner's resignation and honorable discharge from the Army.

Since the filing of the instant motion, however, the Army has finally issued a decision on petitioner's request for a discharge. On June 27, 2006, the Commander of the U.S. Army Reserves denied petitioner's request for resignation on the basis of extreme compassionate circumstances and hardship. See Declaration of Steven J. Saltiel In Support of Opposition to Petition for Write of Habeas Corpus and Writ of Mandamus ("Saltiel Decl."), Ex. 1.  The decision states, in summary fashion, three different reasons for the disapproval of petitioner's request: first, that the evidence provided by petitioner "does not support extreme compassionate circumstances nor that resignation is in the best interest of the service." See id.  Second, that petitioner is obligated under the terms of his Specialized Training Assistance Program and Health Professional Loan Repayment Program ("STRAP/HPLR") contract, and has received a total of $121,930.72 from the U.S. Army Reserves in exchange for his obligated service. Id.  Finally, the decision notes that petitioner "has not attended Battle Assemblies or Annual Training for the past two-year period." Id.

Given the Army's recent decision, the issues actually before the court are (1) whether a preliminary injunction should issue pending the determination of petitioner's underlying petition for writ of habeas corpus and writ of mandamus; and (2) whether the court should grant the underlying petitions and order petitioner's release and honorable discharge from the U.S. Army Reserves.

**DISCUSSION**

A.  Legal Standard

To prevail on his motion for preliminary injunction, petitioner must show "(1) a strong likelihood of success on the merits, (2) the possibility of irreparable injury to [petitioner] if preliminary relief is not granted, (3) a balance of hardships favoring the [petitioner], and (4)

advancement of the public interest (in certain cases)." Alternatively, injunctive relief can be granted if the petitioner "demonstrate[s] either a combination of probable success on the merits and the possibility of irreparable injury or that serious questions are raised and the balance of hardships tips sharply in [his] favor." Rodde v. Bonta, 357 F.3d 988, 994 (9th Cir. 2004) (citation omitted; "[t]hese two alternatives represent extremes of a single continuum, rather than two separate tests"). As a result, "the greater the relative hardship to the party seeking the preliminary injunction, the less probability of success" must be established. Id. (citation omitted).

With respect to military decisions involving the military's internal affairs or personnel decisions, however, the Ninth Circuit has held that the petitioner must make a stronger showing of irreparable harm, or a greater showing of a likelihood of success on the merits where the balance of harms tips less decidedly towards him. See, e.g., Hartikka v. United States, 754 F.2d 1516, 1518 (9th Cir. 1985).

B.  Petitioner's Claims

Although petitioner frames the instant motion as a request for preliminary injunction, the relief petitioner requests is in reality quite broad in scope, and he admittedly seeks resolution of the underlying petition for writ of habeas corpus and writ of mandamus. Accordingly, and since consideration of the request for injunctive relief necessitates consideration of the underlying merits of the petition at any rate, the court will consider the merits of both the underlying petition for writ of habeas corpus and writ of mandamus, along with petitioner's motion for preliminary injunction. Preliminarily, however, as this is a case in which the court is being asked to determine a dispute between an individual and the U.S. military, the court must first consider the issue of justiciability.

1.  Justiciability

Respondents contend that petitioner seeks review of a discretionary military decision, making his entire case non-justiciable. Petitioner responds that review is warranted, since courts have long recognized that even discretionary military decisions

5

may be reviewed in certain circumstances. Both parties, however, agree that the court's determination whether to grant review is controlled by the Ninth Circuit's adoption of the Fifth Circuit's test in Mindes v. Seaman, 453 F.2d 197 (5th Cir. 1971).

Under the Ninth Circuit's adoption of the Mindes test, an internal military decision is unreviewable unless the plaintiff alleges both (1) a violation of a recognized constitutional right, a federal statute, or military regulation; and (2) exhaustion of available intraservice remedies. If the plaintiff alleges both requirements, the court must still weigh four factors to determine whether judicial review shall be granted: (a) the nature and strength of plaintiff's claim; (b) the potential injury to the plaintiff if review is refused; (c) the extent of interference with military functions; and (d) the extent to which military discretion or expertise is involved. See, e.g., Wallace v. Chappell, 661 F.2d 729 (9th Cir. 1981), rev'd on other grounds in Chappel v. Wallace, 462 U.S. 296 (1983); see also Wenger v. Monroe, 282 F.3d 1068, 1072 (9th Cir. 2002).

For the reasons discussed below, petitioner here fails to satisfy the threshold Mindes elements, and further fails to demonstrate that the balance of the four Mindes factors tilts in his favor.

(a) threshold requirements

Petitioner asserts that the first two threshold requirements under the Mindes test have been satisfied. First, he claims that he has alleged a violation of the military regulation governing unqualified resignations for obligated officers, AR 135-175, § 6-10(a)(1), pursuant to which the Army has discretion to allow separation of an obligated officer under "extreme compassionate circumstances." See Saltiel Decl., Ex. 2. Second, petitioner alleges that he has exhausted all available remedies: at the time petitioner filed both his habeas petition and motion for preliminary injunction, no decision had issued on petitioner's request for discharge (preventing petitioner from taking any other action), and now, petitioner's request has officially been denied, which leaves petitioner with no additional recourse other than to the courts.

6

While respondents do not dispute that petitioner satisfies the second requirement relating to exhaustion of remedies, they argue that petitioner's invocation of AR 135-175 is not enough to allege the violation of a military regulation as required by the Ninth Circuit's Mindes test. According to respondents, in order to properly allege the violation of a discretionary military regulation, petitioner must do more than simply recite the particular regulation that it claims respondents have violated. Rather, petitioner must allege the military's failure to adhere to procedural requirements in the exercise of the military's discretion. Otherwise, petitioner's allegation that a discretionary military regulation has been violated amounts to no more than a claim that respondents should have exercised their discretion differently, or that petitioner simply meets the minimum criteria for a discretionary decision.

The court finds respondents' argument persuasive. Although the court has found no Ninth Circuit authority specifically dealing with review of a similar discretionary military regulation regarding discharge, the court notes that other courts have dealt with similar situations, and come to the conclusion urged upon this court by respondents. Those courts have found that judicial review of discretionary discharge rulings of the military services is limited, and while courts may order the Army to afford individuals the administrative and/or procedural rights created by discretionary regulations, they may not order the Army to exercise its discretion one way or the other. See, e.g., Rucker v. Sect'y of the Army, 702 F.2d 966, 971 (11th Cir. 1983)(stating that judicial review of ultimate disposition of discharge decision is not available where decision is based on discretionary military regulation); see also Smith v. Resor, 406 F.2d. 141, 145 (2d Cir. 1969)(pre-Mindes).

So here. Petitioner disagrees with respondents' final determination that no extreme compassionate circumstances were present, as well as respondents' consideration of other factors such as contract status and his performance history. Although petitioner attempts to argue that the cursory nature of this decision is in and of itself a violation of respondents' own procedures, this argument is untenable. For even petitioner's counsel conceded at the

7

hearing on the instant motion that the discretionary nature of AR 135-175 necessarily contemplates that respondents might deny petitioner's discharge application *even if extreme compassionate circumstances are present*, and that this would not be a violation of the regulation.  Accordingly, the fact that respondents explicitly stated they found no evidence of extreme compassionate circumstances, and further found additional factors weighing in favor of denial, can in no way establish a violation of AR 135-175.

In sum, petitioner's allegations contain no challenge to the administrative and/or procedural rights created by AR 135-175, and amount to no more than a disagreement with the ultimate decision reached by respondents.  As such, petitioner has failed to allege the violation of a military regulation as required by the Ninth Circuit's Mindes test, and has therefore failed to satisfy the threshold requirements for justiciability.

(b) four Mindes factors

Given the above holding, the court need not consider the four Mindes factors to determine whether judicial review of the instant matter is appropriate.  However, it is worth noting that even if petitioner had satisfied the threshold requirements for justiciability, he still could not have prevailed in demonstrating that the four Mindes factors weigh in his favor.

Nature/Strength of Petitioner's Claim.  The nature and strength of petitioner's claim fundamentally comes down to whether petitioner has set forth a prima facie case of hardship, and whether respondents' denial of his application for discharge is supported by an adequate basis.  Based on the evidence that petitioner has submitted, the court concludes that petitioner has likely established a prima facie case of hardship: petitioner introduced a letter from Dr. R. Hildreth regarding the psychiatric state of his wife (stating that she likely suffers from "a biological mood disorder that [is] likely to re-occur episodically in adult years"); affidavits from Dr. Harris, Chief of Surgery at the hospital that petitioner serves, and the CEO of another hospital he serves, both attesting to the community's need for petitioner's services; an affidavit from his wife setting forth the hardship that would

1  ensue in the event of petitioner's deployment; and itemized lists of expenses and income
2  that establish financial impact in the event of deployment.  <u>See, e.g.</u>, Administrative Record
3  ("AR") at 000005, 000007-08, 000016, 000021-24.
4    As to whether respondents' decision is supported by an adequate basis, however,
5  petitioner would not so easily prove the contrary.  In its entirety, respondents' decision
6  disapproving petitioner's request for discharge mentioned 4 different grounds: (1) that the
7  "evidence provided does not support extreme compassionate circumstances"; (2) that
8  resignation is not "in the best interest of the service"; (3) that petitioner has received more
9  than $121,000 for his medical skills in exchange for his obligated service, under the STRAP
10 program, pursuant to which petitioner is still under contract; and (4) petitioner has a history
11 of not satisfactorily completing the conditions of his STRAP contract.  Given that there are
12 no standards set forth for determining "extreme compassionate circumstances," and that a
13 finding of extreme compassionate circumstances does not mandate the granting of a
14 request, it cannot necessarily be said that respondents' reasoning does not adequately
15 support respondents' determination that no such circumstances exist.  This conclusion is
16 further supported by evidence in the Administrative Record showing that petitioner had
17 valid STRAP agreements in place obligating him for service until 2019, and by evidence
18 that certain commanders actually recommended disapproval of petitioner's request initially.
19 <u>See</u> AR at 000009, 000034.
20   In view of the above, the first <u>Mindes</u> factor does not clearly weigh in petitioner's
21 favor.
22   <u>Potential Injury to Petitioner</u>.  Petitioner contends that permanent psychological
23 consequences will result for his family in the event judicial review, and a subsequent order
24 of discharge from the U.S. Army Reserves, is not granted.  The Army responds that
25 petitioner's claims are overstated, and that, in view of the fact that petitioner will receive an
26 annualized income of $179,568, as well as the fact that petitioner voluntarily signed on to
27 give the Army his service in exchange for his medical training, the inconvenience that
28

1  petitioner will suffer was fairly bargained for and cannot constitute a legal injury.

2  Although this factor might cut either way, the court will grant petitioner the benefit of
3  the doubt, and will conclude that this factor weighs in his favor.

4  <u>Interference with Military Functions/Involvement of Military Discretion or Expertise</u>.
5  Unlike with the first two <u>Mindes</u> factors, consideration of both the third and fourth <u>Mindes</u>
6  factors cuts decisively against granting review here.  If review were granted, the court
7  would have to involve itself in issues closely intertwined with military functions and
8  discretion – something courts have been reluctant to undertake in the past.

9  The Ninth Circuit, for example, has specifically held that discretionary military
10 decisions such as those relating to reenlistment in the military are not proper for review.
11 <u>See Adams v. United States</u>, 17 Fed. Appx. 733, 735 (9th Cir. 2001)(deeming inquiry into
12 military personnel decisions as they relate to reeinlistment as area involving "military
13 expertise and discretion" and denying review).  This is similar to what petitioner seeks to
14 have the court do here – review a discretionary military decision as it relates to the
15 military's view of who should be serving, and for how long.  As such, review is equally
16 improper here.

17 Notably, as respondents point out, in one of the only reported cases addressing
18 review of service-members' requests for transfer and resignation (from the state National
19 Guard) during the present time of war, the court also declined to hold the service-member's
20 case justiciable and held that consideration of the third and fourth <u>Mindes</u> factors prohibited
21 review.  <u>See Pickett v. Ariz. Dep't of Emergency & Military Affairs</u>, 2006 WL 89945 (D. Ariz.
22 2006).  Specifically, the court noted that: "interference with military functions should only be
23 done sparingly and only in exceptional circumstances. ... 'Military transfer decisions go to
24 the core of deployment of troops and overall strategies of preparedness' and courts should
25 be 'wary of intruding upon that sphere of military decision-making.'" <u>See id</u>. at *2.  The court
26 relied, for this reasoning, on the Ninth Circuit's holding in <u>Sebra v. Neville</u>, 801 F.2d 1135
27 (9th Cir. 1986), in which the court declined to grant review of a military transfer decision
28

10

based on analysis of the Mindes factors, including a focus on the final two factors.

So here. In view of the above reasoning espoused by both the Ninth Circuit and at least one other district court, the final two Mindes factors decisively cut against review by the court.

As such and on balance, consideration of all four Mindes factors leads to the conclusion that the matters raised by petitioner, in both the instant motion, and the underlying petition, are not justiciable.

### 2. Motion for Preliminary Injunction and Underlying Petition

The court's finding of non-justiciability warrants denial of the instant motion for preliminary injunction, as well as dismissal of the underlying petition for writ of habeas corpus and writ of mandamus in this case.

### C. Conclusion

For the above reasons, the court hereby DENIES petitioner's motion for a preliminary injunction, and DISMISSES the underlying petition for writ of habeas corpus and writ of mandamus.

As discussed at the hearing on the instant motion, however, the court's dismissal of petitioner's underlying petition is made without prejudice, and petitioner is given leave to file a motion to amend the underlying petition, which motion will be reviewed by the court for futility. Any motion to amend must be filed within thirty (30) days of the date of this order. If no motion is filed, judgment will be entered.

**IT IS SO ORDERED.**

Dated: August 15, 2006

PHYLLIS J. HAMILTON
United States District Judge